UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
GOTTLIEB DEVELOPMENT LLC,                    :

                    Plaintiff,              :

          - against -                        :

PARAMOUNT PICTURES CORPORATION,              :

                    Defendant.              :
- - - - - - - - - - - - - - - - - - x



**OPINION**

08 Civ. 2416 (DC)



**CHIN, District Judge**

          In the motion picture "What Women Want," released by
defendant Paramount Pictures Corporation ("Paramount") in 2000,
Mel Gibson plays an advertising executive who acquires the
ability to "hear" what women are thinking.  In one scene, Gibson
and his co-star Helen Hunt brainstorm with other employees to
develop ideas for marketing certain consumer products to women.
At various points during the scene, as shown, for example, in the
photograph above, a pinball machine -- the "Silver Slugger" --

appears in the background.  The Silver Slugger is distributed by
plaintiff Gottlieb Development LLC ("Gottlieb"), and Paramount
used the pinball machine in the scene without Gottlieb's
permission.

In this case, Gottlieb sues Paramount, alleging that
Paramount engaged in copyright and trademark infringement, unfair
competition, and deceptive trade practices by using the Silver
Slugger in the movie without Gottlieb's permission.  Paramount
moves to dismiss the complaint pursuant to Fed. R. Civ. P,
12(b)(6), arguing principally that its use of the pinball machine
was de minimis and therefore not actionable.  I agree.
Accordingly, Paramount's motion is granted and the complaint is
dismissed.

## BACKGROUND

### A.   The Facts

The facts alleged in the complaint and set forth in the
exhibits incorporated therein by reference are assumed to be true
for purposes of this motion.  They are as follows:

#### 1.   The Silver Slugger

Gottlieb distributes and sells the "Silver Slugger"
pinball machine.  (Complaint ("Compl.") ¶¶ 4, 9-11 & Ex. A).  The
Silver Slugger features three original designs (the "Designs"):
(1) a depiction of a baseball diamond on the backglass, which is
the upright back portion of the pinball machine; (2) another
baseball diamond on the playfield, which is the playing surface

-2-

of the machine; and (3) the layout of the parts of the playfield. (Id. ¶ 4 & Ex. A). The Designs are copyrighted, and Gottlieb has owned the copyrights since 1998. (Id. ¶ 4).

The trademark GOTTLIEB also appears on the Silver Slugger, in several places. (Id. ¶ 9 & Ex. A). Gottlieb has owned the mark since 1998, and Gottlieb and its predecessors have used the mark in interstate commerce continuously since 1985. (Id. ¶¶ 9, 10).

## 2. The Film

In December 2000, Paramount released the motion picture "What Women Want" (the "Film"). (Id. ¶ 5). Paramount has shown the Film in theaters and sold and otherwise distributed it worldwide since then on DVD and VHS tapes and on television. (Id.). The Film is a romantic comedy starring Gibson and Hunt. Gibson plays an advertising executive who unexpectedly gains the ability to hear the thoughts of the women around him.[1] The Film runs for a little over two hours, and the scene at issue occurs approximately thirty-seven minutes into the Film.

---

[1]   A DVD copy of the Film is attached to the Declaration of Eleanor M. Lackman, dated July 11, 2008 ("Lackman Decl."), as Exhibit E.  As the Film is referred to in the complaint and is integral to Gottlieb's claims, it is deemed incorporated into the complaint by reference.  Hence, I consider it on this motion to dismiss.  See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004); accord Int'l Audiotext Network v. AT&T, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.").

-3-

The three-and-a-half minute scene depicts a
brainstorming meeting in the office of the advertising agency.
The meeting takes place in a large room with a relaxed and casual
atmosphere -- the room contains recliner chairs and bar stools,
and on the far wall there is a large poster board prominently
displaying the word "PLAY." A mini basketball hoop appears on
one side of the room, and a statue of a penguin appears on the
other. Approximately eight people are sitting in a circle.
Behind one woman is a table soccer -- or "foosball" -- game. As
Gibson's character pitches various ideas for advertisements, the
"Silver Slugger" appears intermittently in the background, next
to another pinball machine. It appears only for seconds at a
time, always in the background, and always partially obscured by
Gibson, a recliner chair, or a bar stool. The "Silver Slugger"
does not appear in any shot by itself, nor is it part of the
plot. It does not appear anywhere else in the Film, nor does any
character ever refer to it. It is simply part of the background
in one limited scene.

## B.   **Prior Proceedings**

Gottlieb commenced this action against Paramount by
filing a summons and complaint on March 10, 2008. The complaint
contains five causes of action:  (1) copyright infringement under
the Copyright Act, 17 U.S.C. § 501 et seq.; (2) trademark
infringement under the Lanham Act, 15 U.S.C. § 1125(a); (3)
unfair competition under New York common law; (4) unjust
enrichment under New York law; and (5) deceptive trade practices

-4-

under the New York State General Business Law, N.Y. Gen. Bus. Law
§ 349.  The complaint asserts a sixth cause of action for
injunctive relief.

            The complaint alleges that Paramount infringed
Gottlieb's copyrights in the Designs by using the Silver Slugger
in the Film without its permission.  (Compl. ¶¶ 5, 6).  The
complaint further alleges that Paramount infringed Gottlieb's
trademark by using the mark in the Film "for approximately 3
minutes," without permission, in a manner that is "likely to
cause confusion, to cause mistake and to deceive."  (Id. ¶¶ 12,
13).  The remaining causes of action are based on similar
allegations.  (Id. ¶¶ 21, 24, 27-28, 31).

            This motion followed.

## DISCUSSION

### A.    Standard on a Motion to Dismiss

            On a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6), the court must accept the plaintiff's
factual allegations as true and draw all reasonable inferences in
its favor.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996);
see also Erickson v. Pardus, 127 S. Ct. 2197, 2199 (2007) (per
curiam).

            In its recent decision in Bell Atlantic Corp. v.
Twombly, the Supreme Court announced the "retirement" of the oft-
quoted "no set of facts" language from Conley v. Gibson, 355 U.S.
41, 45-47 (1957), and adopted in its place a "plausibility"
requirement.  127 S. Ct. 1955, 1969 (2007).  As interpreted by

the Second Circuit, Bell Atlantic Corp. did not announce a
"universal standard of heightened fact pleading, but . . .
instead requir[es] a flexible 'plausibility standard,' which
obliges a pleader to amplify a claim with some factual
allegations in those contexts where such amplification is needed
to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143,
157-58 (2d Cir. 2007).  The question is whether the pleading
alleges "'enough facts to state a claim for relief that is
plausible on its face.'"  Patane v. Clark, 508 F.3d 106, 111-12
(2d Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1974).

                "'[B]ald contentions, unsupported characterizations,
and legal conclusions are not well-pleaded allegations,'" and
will not defeat the motion.  Gavish v. Revlon, Inc., No. 00 Civ.
7291 (SHS), 2004 U.S. Dist. LEXIS 19771, at *10 (S.D.N.Y. Sept.
30, 2004) (quoting Citibank, N.A. v. Itochu Int'l, Inc., No. 01
Civ. 6007 (GBD), 2003 U.S. Dist LEXIS 5519, at *2 (S.D.N.Y. Apr.
4, 2003)).

## B.   The Merits

### 1.   Copyright Infringement

                It is undisputed as a factual matter that Paramount
copied the Silver Slugger, as an actual Silver Slugger appears in
the Film.  Paramount argues, however, that the use of the pinball
machine was so trivial that the copying is not actionable.

#### a.   Applicable Legal Standards

                A copyright holder enjoys the right to reproduce and
display publicly a copyrighted work.  17 U.S.C. § 106(1), (5).

To prevail on a claim of copyright infringement, a plaintiff must prove that (1) unauthorized copying of the copyrighted work occurred, and (2) the infringing work is substantially similar. Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003). To prove substantial similarity, a plaintiff must show "'(i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is 'more than de minimis.'" Id. (quoting Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137-38 (2d Cir. 1998)); see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) (holding that copyright infringement plaintiff must show valid copyright and copying of original elements of work).

To determine substantial similarity, a court must decide "whether the average lay observer would recognize the challenged material as having been copied from the copyrighted work." Crane v. Poetic Prods., 549 F. Supp. 2d 566, 569 (S.D.N.Y. 2008) (quoting Flaherty v. Filardi, 388 F. Supp. 2d 274, 286 (S.D.N.Y. 2005)). When similar works resemble each other only in unprotected aspects -- for example, when similarities inhere in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff -- the defendant prevails. Bill Diodato Photography, LLC v. Kate Spade, LLC, 388 F. Supp. 2d 382, 390 (S.D.N.Y. 2005) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2] (2005)); see also Tufenkian, 338 F.3d at 131

("[S]ubstantial similarity, we emphasize again, must be to that which is protected in the plaintiff's work.").

In some instances, substantial similarity may be an issue even where, as here, copying as a factual matter is established. As the Second Circuit has explained, there is a difference between "factual copying and actionable copying":

> The former (probative similarity) requires only the fact that the infringing work copies something from the copyrighted work; the latter (substantial similarity) requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.

Ringgold v. Black Entm't T.V. Inc., 126 F.3d 70, 75 (2d Cir. 1997). In other words, even when it is undisputed that copying as a factual matter occurred, there still may be an issue as to whether the copying is actionable. Id.

The legal maxim "de minimis non curat lex" -- "the law does not concern itself with trifles" -- applies in the copyright context. Id. at 74. For example, if the copying is de minimis and so "trivial" as to fall below the quantitative threshold of substantial similarity, the copying is not actionable. Id. 74-75; see also Davis v. Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001) (where unauthorized copying is trivial, "the law will not impose legal consequences"); Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998) ("To establish that the infringement of a copyright is de minimis, and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the

-8-

quantitative threshold of substantial similarity, which is always a required element of actionable copying.'") (quoting Ringgold). To determine whether the quantitative threshold of substantial similarity is met in cases involving visual works, courts consider the extent to which the copyrighted work is copied in the allegedly infringing work. The observability of the copyrighted work is critical, and courts will consider the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence. Sandoval, 147 F.3d at 217; Ringgold, 126 F.3d at 75.

In Sandoval, the Second Circuit affirmed the district court's determination that the use of the plaintiff's copyrighted photographs in the motion picture "Seven" was de minimis and therefore not actionable. The photographs appeared in the film for a total of only 35.6 seconds. They were primarily in the background and were never in focus, and they were often obstructed from view. See Sandoval, 147 F.3d at 218 ("[The] photographs as used in the movie are not displayed with sufficient detail for the average lay observer to identify even the subject matter of the photographs, much less the style used in creating them.").

Courts in this district have dismissed copyright infringement claims on Rule 12(b)(6) motions where no substantial similarity was found. See Bell v. Blaze Magazine, No. 99 Civ. 12342 (RCC), 2001 U.S. Dist. LEXIS 2783, at *9 (S.D.N.Y. Mar. 16, 2001) (dismissing plaintiff's claim where no reasonable jury

-9-

could find substantial similarity or that similarity pertains only to unprotected aspects of work); Boyle v. Stephens, Inc., No. 97 Civ. 1351 (SAS), 1998 U.S. Dist. LEXIS 1968, at *12 (S.D.N.Y. Feb 25, 1998) (same).

### b. Application

Based on the facts alleged in the complaint, and on a viewing of the Film, I conclude that there is no plausible claim of copyright infringement here. Although Gottlieb has sufficiently pled unauthorized copying of its Designs, the use of the Silver Slugger was de minimis as a matter of law. Hence, no reasonable juror could find substantial similarity in the legal sense, and thus the copying is not actionable.

The scene in question lasts only three-and-a-half minutes, and the Silver Slugger appears in the scene sporadically, for no more than a few seconds at a time. More importantly, the pinball machine is always in the background; it is never seen in the foreground. It never appears by itself or in a close-up. It is never mentioned and plays no role in the plot. It is almost always partially obscured (by Gibson and pieces of furniture), and is fully visible for only a few seconds during the entire scene. The Designs (on the backglass and playfield of the pinball machine) are never fully visible and are either out of focus or obscured. Indeed, an average observer would not recognize the Designs as anything other than generic designs in a pinball machine.

-10-

Gottlieb cites to Ringgold in support of its claim, but
the facts of that case are inapposite.  Ringgold involved the
unauthorized use of a copyrighted poster in an episode of a HBO
television series.  The poster was shown, in whole or in part,
nine times during a five-minute scene at the end of the episode.
The poster (or a portion thereof) was seen for 1.86 to 4.16
seconds at a time, for a total of 26.75 seconds.  In some
instances, the poster appeared at the center of the screen.  126
F.3d at 72-73.  As the Second Circuit held, the poster was
"plainly observable."  Id. at 76.

More importantly, there was a qualitative connection
between the poster and the show.  The poster included a painting
depicting a Sunday School picnic held by the Freedom Baptist
Church in Atlanta, Georgia, in 1909, and was intended to convey
"aspects of the African-American experience in the early 1900s."
Id. at 72.  The show was "ROC," a television "sitcom" series
about a middle-class African-American family living in Baltimore,
and the scene in question was of a gathering in a church hall
with a minister.  Id. at 72-73.  The Second Circuit noted that
HBO's production staff "evidently thought that the poster was
well suited as a set decoration for the African-American church
scene of a ROC episode."  Id. at 77.  The Second Circuit
concluded:

> From the standpoint of a quantitative
> assessment of the segments, the principal
> four-to-five second segment in which almost
> all of the poster is clearly visible, albeit
> in less than perfect focus, reenforced by the
> briefer segments in which smaller portions

-11-

> are visible, all totaling 26 to 27 seconds,
> are not de minimis copying.
>
>          . . . The painting component of the
> poster is recognizable as a painting, and
> with sufficient observable detail for the
> "average lay observer" . . . to discern
> African-Americans in Ringold's colorful,
> virtually two-dimensional style.  The de
> minimis threshold of actionable copying of
> protected expression has been crossed.

Id. at 77 (citation omitted).

          In the present case, the "average lay observer" would
not be able to discern any distinctive elements of Gottlieb's
Designs -- the baseball players clad in stylized, futuristic
gear.  The best that the average lay observer could make out in
the background is a typical home-plate layout with baseball
players arrayed around it.  The unique expressive element of the
Designs is not discernable in those brief moments when the
backglass is visible.  The only other protected element of the
backglass is the "Silver Slugger" logo in the upper left hand
corner, which is glimpsed fleetingly, and in poor focus, during
the scene.  The camera sweeps past the logo without dwelling or
focusing on it.  The average lay observer would not discern the
stylized aspects of the logo attributable to Gottlieb based on
the way the logo appears in the background of the scene.

          Gottlieb also asserts that the "Silver Slugger" logo
emblazoned on the right side of the pinball machine, which is
visible near the center of the frame during the final seconds of
the scene, should rise to the level of actionable copyright
infringement.  (Pl. Mem. 8).  But Gottlieb has only claimed

-12-

copyrights in the Designs on the backglass and the playing field, and not for the "Silver Slugger" logo on the side of the pinball machine. (Compl. 2). Moreover, the "Silver Slugger" logo occupies less than five percent of the frame area, is partially obscured by scenery in the foreground (including Gibson's head), and is not elevated into any prominence by the camera. Even if Gottlieb were to assert a proprietary claim over this logo, the circumstances here would compel the conclusion that the copying was de minimis as well.

Moreover, while use of a copyrighted work in the background may still be a basis for an infringement claim, see Ringgold, 126 F.3d at 77, where the use is de minimis, the copying will not be actionable, even where the work was chosen to be in the background for some thematic relevance. As the Second Circuit explained in Ringgold, "in some circumstances, a visual work, though selected by production staff for thematic relevance, or at least for its decorative value, might ultimately be filmed at such distance and so out of focus that a typical program viewer would not discern any decorative effect that the work of art contributes to the set." 126 F.3d at 77. Here, undoubtedly the Silver Slugger was chosen by the production staff because it fit in with the "sporty" theme of the background in the scene; but the Silver Slugger was one of numerous background items, and it was filmed in such a manner and appears so fleetingly that I conclude there is no plausible claim for copyright infringement

-13-

here.  Accordingly, Gottlieb's copyright infringement claim is
dismissed.

>    **2.    The Trademark Claim**

        I also conclude that Gottlieb has not pled a plausible
trademark infringement claim.  Gottlieb alleges that Paramount's
unauthorized use of its trademark in the Film is likely to cause
confusion as to the source and sponsorship of Gottlieb's
products.  But there is no plausible claim of a likelihood of
confusion here, for the reasons that follow.

>        **a.    Applicable Legal Standards**

        Section 43(a)(1)(A) of the Lanham Act provides a cause
of action for a trademark holder against any person who misuses
its trademark in a way that is "likely to cause confusion" to the
buying public as to the origin, affiliation or sponsorship of the
trademark holder's product or service.  15 U.S.C. §1125(a)(1)(A).

        To bring a successful claim under section 43(a)(1)(A),
a plaintiff must show that (i) it has a distinctive mark, i.e.
that it has a mark or trade dress distinctive to the source of
the good or service at issue, and (ii) there exists a likelihood
of confusion between the plaintiff's good or service and that of
the defendant by the buying public.  See <u>Wal-Mart Stores v.
Samara Bros.</u>, 529 U.S. 205, 210 (2000); <u>ITC Ltd. v. Punchgini,
Inc.</u>, 482 F.3d 135, 154 (2d Cir. 2007); <u>Twentieth Century Fox
Film Corp. v. Marvel Enters.</u>, 155 F. Supp. 2d 1, 20 (S.D.N.Y.
2001).

The hallmark of infringement is the likelihood of confusion by the buying public between the plaintiff's goods or services and that of the defendant.  See Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 174 (2d Cir. 2000); Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508-09 (2d Cir. 1997).  Therefore, for a cognizable claim in trademark cases, the plaintiff must raise "a serious question" as to the likelihood of confusion.  Am. Cyanamid v. Campagna per la Farmacie in Italia, S.P.A., 847 F.2d 53, 55 (2d Cir. 1988) (internal citations and quotations omitted).

### b.  **Application**

I assume that Gottlieb is the owner of the GOTTLIEB mark and that the mark is distinctive.  The key issue is the likelihood of confusion.

Gottlieb does not allege any facts to support the conclusion that consumer confusion will likely result from Paramount's use of its mark.  On a viewing of the Film, it would be difficult for even a keen observer to pick out Gottlieb's trademark, as it appears in the background of the scene.  The trademark is visible at various places on the pinball machine, but it occupies only a minute fraction the frame for three segments lasting approximately three seconds each.  Moreover, as discussed above, the pinball machine is merely part of the background, together with another pinball machine, a foosball table, and other furniture and furnishings.

-15-

In these circumstances, Gottlieb's assertion that the appearance of its trademark in the Film would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines is simply not plausible. See Sherwood 48 Assocs. v. Sony Corp. of Am., 213 F. Supp. 2d 376, 377 (S.D.N.Y. 2002) (dismissing plaintiff's Lanham Act claims because the lone fact that defendant digitally inserted images of plaintiff's Time Square buildings into a scene of the film "Spider-Man" did not indicate consumer confusion), aff'd in part, vacated in part on other grounds, 76 Fed. Appx. 389 (2d Cir. 2003). Courts are not concerned with "mere theoretical possibilities of confusion" or "de minimis situations" in trademark cases. See Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp., 954 F.2d 713, 717 (Fed. Cir. 1992). Other courts that have considered the appearance of consumer products in motion pictures routinely fail to find any likelihood of confusion. See, e.g., Wham-O Inc. v. Paramount Pictures Corp., 286 F. Supp. 2d 1254, 1262 (N.D. Cal. 2003) (appearance of plaintiff's water slide toy in defendant's motion picture will not lead "[c]onsumers and viewers [to] mistake plaintiff for a movie production house, and consumers and viewers will not mistake defendants for a purveyor of toys."). Here, no viewer of the Film would consider whether Paramount sponsored the pinball machine or Gottlieb sponsored the Film.

Nor does Gottlieb allege any fact tending to show willful infringement or bad faith on the part of Paramount in its use of the Gottlieb mark. In Caterpillar Inc. v. Walt Disney

-16-

Co., the court expressed discomfort with the plaintiff's Lanham Act claim because there was no indication of the defendant's intent to "poach or free-ride" on the fame or good will of the plaintiff's trademarks. 287 F. Supp. 2d 913, 919 (C.D. Ill. 2003). As the court in Caterpillar pointed out, the "mere appearance" of a Ford Taurus in a generic film scene involving a car chase would not, by itself, support a trademark infringement claim. Id. at 920. The court concluded that no consumer decision would likely be affected as a result of "any mistaken belief that Caterpillar sponsored [defendant's] movie." Id. There is no indication that Paramount deliberately placed the Silver Slugger into the scene to capitalize on the good will associated with Gottlieb's mark. Paramount could just as well have substituted any other pinball machines to meet its purpose, and, in fact, there was a second, apparently unrelated pinball machine in the scene as well.

It should be noted that Gottlieb does allege a theory of harm in its opposition brief -- namely, that its business reputation will be injured by any association of its products with the actor Mel Gibson and his purported anti-Semitic beliefs. (Pl. Mem. 17-18). The notion that any viewer of the Film would think less of Gottlieb because its pinball machine appears briefly in the background in a romantic comedy featuring Mel Gibson is absurd. Moreover, Gottlieb "may not rely on the purely dignitary, non-commercial harm that might arise from being associated with defendants or defendants' products" when

-17-

asserting a Lanham Act claim.  <u>Cecere v. R.J. Reynolds Tobacco</u>
<u>Co.</u>, No. 98 Civ. 2011 (RPP), 1998 U.S. Dist. LEXIS 15100, at *6
(S.D.N.Y. Sept. 27, 1998) (dismissing Lanham Act claim because
plaintiff failed to allege specific economic losses that would
result from defendant's use of a photograph of plaintiff's
building to advertise Camel Cigarettes).

　　　　Gottlieb alleges no facts to suggest that Paramount's
use of its trademark will likely cause consumer confusion, or
that Paramount was motivated by ill-intent to free-ride on the
goodwill associated with Gottlieb's mark.  Because Gottlieb does
not amplify its trademark claim with factual allegations to rise
"above the speculative level," <u>Twombly</u>, 127 S. Ct. at 1965, its
trademark infringement claim is hereby dismissed.

### 3.    The Deceptive Trade Practices Claim

　　　　Gottlieb further alleges deceptive trade practices
under New York General Business Law Section 349, which prohibits
"[d]eceptive acts or practices in the conduct of any business,
trade or commerce or in the furnishing of any service in this
state," and expressly provides a private right of action to "any
person who has been injured by reason of any violation" of the
statute.  N.Y. Gen. Bus. Law § 349(a), (h) (McKinney 2008).  This
claim is dismissed as well.

### a.    Applicable Legal Standards

　　　　To bring a claim under section 349, a plaintiff must
show that:  (1) the defendant's conduct was misleading in a
material respect, and (2) the conduct was directed at the public

-18-

at large, injuring the plaintiff thereby. See Twentieth Century Fox Film Corp. v. Marvel Enters., 155 F. Supp. 2d 1, 25 (S.D.N.Y. 2001). Private transactions not of a recurring nature or without ramifications for the general public do not fall within the purview of section 349. Netzer v. Continuity Graphic Assocs., 963 F. Supp. 1308, 1323 (S.D.N.Y. 1997) (focus of section 349 is on consumer protection, and "generally prohibits only those deceptive practices affecting the public at large").

"'The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.'" U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc., No. 04 Civ. 6189 (JFK), 2008 U.S. Dist. LEXIS 64297, at *56 (S.D.N.Y. Aug. 21, 2008) (quoting Genesco Entm't v. Koch, 593 F. Supp. 743, 751-52 (S.D.N.Y. 1984)). Whether a plaintiff can bring a section 349 claim will depend on "whether the matter affects the public interest in New York." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

The pleading standards under the Lanham Act and section 349 of the New York General Business Law are "substantially the same." Avon Prods. v. S.C. Johnson & Son, Inc., 984 F. Supp. 768, 800 (S.D.N.Y. 1997). Courts thus adopt essentially the same analysis for both section 349 and Lanham Act claims. See 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC, 447 F. Supp. 2d 266, 288 (S.D.N.Y. 2006) ("These claims depend on the same

-19-

analysis . . . ."); <u>accord</u> <u>Twentieth Century Fox</u>, 155 F. Supp. at
26.

### b.    **Application**

Gottlieb fails to allege any facts that tend to show
either material deception on the part of Paramount or harm to the
public interest.

Gottlieb has not alleged any facts to show that
Paramount's conduct could materially mislead the public.  For the
reasons that Gottlieb fails to plead a set of facts that would
demonstrate a likelihood of confusion to sustain a Lanham Act
claim, it likewise cannot show any materially misleading conduct
by Paramount.  The assertion that Paramount misled the public by
using the Silver Slugger in the background in one scene in the
Film is not plausible.

Likewise, Gottlieb fails to allege a plausible claim
that Paramount's conduct injured the public interest.  Gottlieb
has not alleged any facts that support the claim that it has been
harmed by Paramount's conduct, much less to support the
proposition that the public at large has been misled.  Although
Gottlieb insists that Paramount's conduct has ramifications for
consumers at large, it has not furnished anything more than
conclusory and speculative allegations about how the public will
be deceived as to the affiliation or endorsement of its products.
(Pl. Mem. 22).  <u>See</u> <u>Vitolo v. Mentor H/S, Inc.</u>, 426 F. Supp. 2d
28, 34 (E.D.N.Y., 2006), <u>aff'd</u>, 213 Fed. Appx. 16 (2d Cir. 2007)
(no cognizable claim under section 349 where plaintiff's

-20-

complaint focused on losses suffered by plaintiff's business
rather than by plaintiff's patients or public at large).

        Accordingly, Gottlieb's claim under section 349 of the
New York General Business Law is dismissed.

## 4.    **Remaining State Law Claims**

        Gottlieb also brings claims of unfair competition and
unjust enrichment under New York common law, asserting that such
claims arise from Paramount's unauthorized use of both its
copyrights and its trademark.  (Compl. ¶¶ 21, 24).  To the extent
that these state law claims of unfair competition or unjust
enrichment sound in misappropriation of copyright, they are
preempted by the Copyright Act.  17 U.S.C. § 301(a); see also
Twentieth Century Fox, 155 F. Supp. at 24-25 (dismissing
plaintiff's claim of unfair competition under New York law as
preempted by Copyright Act) (citing Arden v. Columbia Pictures
Indus., Inc., 908 F. Supp. 1248, 1263 (S.D.N.Y. 1995)); Am. Movie
Classic Co. v. Turner Entm't Co., 922 F. Supp. 926, 933-34
(S.D.N.Y. 1996) (stating that claims of unfair competition and
unjust enrichment under state law deriving from unauthorized use
of material are preempted by copyright law).  To the extent
Gottlieb's state common law claims are based on its trademark
infringement claim, they are dismissed for the reasons that its
trademark claim is dismissed, as discussed above.  See Louis
Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 119 (2d
Cir. 2006) (unfair competition claim under New York Law is
analyzed in the same manner as a Lanham Act trademark

-21-

infringement claim); Info. Superhighway, Inc. v. Talk Am., Inc.,
395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005) (stating that elements of
unfair competition under New York law "mirror Lanham Act
claims").

## CONCLUSION

For the reasons set forth above, defendants' motion to
dismiss is granted in its entirety, with prejudice and with costs
(but without attorneys' fees).  The Clerk of the Court shall
enter judgment accordingly and close this case.

SO ORDERED.

Dated:    New York, New York
          December 29, 2008

DENNY CHIN
United States District Judge

**APPEARANCES:**

Attorney for Plaintiff:

        GABRIEL FISCHBARG, ESQ.
        239 East 79th Street, Suite 4-A
        New York, New York   10075

Attorneys for Defendant:

        ARNOLD & PORTER LLP
           By:   Peter L. Zimroth, Esq.
                James B. Swire, Esq.
                Eleanor M. Lackman, Esq.
        399 Park Avenue
        New York, New York   10022